# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ROBERT W. ZIEGER,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:17-cv-631
Black, J.; Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's applications for disability insurance benefits (DIB) and supplemental security income

(SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 10), the

Commissioner's response in opposition (Doc. 16), and plaintiff's reply memorandum (Doc. 17).

## I. Procedural Background

Plaintiff filed his applications for DIB and SSI in January 2014 alleging disability since

November 19, 2013, due to chronic obstructive pulmonary disease (COPD), major joint disorder

of the knee, affective disorder, and borderline intellectual functioning. After initial

administrative denials of his claim, plaintiff was afforded a *de novo* hearing before

administrative law judge (ALJ) Peter Jamison on April 8, 2016. On July 21, 2016, the ALJ

issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by

the Appeals Council was denied, making the decision of the ALJ the final administrative

decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i) -(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since November 19, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: chronic obstructive pulmonary disease (COPD), a major joint disorder of the knee, an affective disorder, and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; push/pull as much as can lift/carry; sit for 6 hours, walk for 6 hours, and stand for 6 hours; operate foot controls with the right lower extremity occasionally; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; never kneel, crouch, or crawl; avoid all exposure to unprotected heights and hazardous moving mechanical parts; avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants; avoid all exposure to humidity and wetness, extreme cold, and vibration; limited to performing simple, routine, and repetitive tasks, but not at a production rate pace (e.g., assembly line

work); limited to simple work-related decisions; limited to tolerating few changes in a routine work setting defined as no more than ordinary and routine changes in the work setting and duties.

6. The [plaintiff] is unable to perform past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1965 and was 48 years old, which is defined as "younger individual age 18-49," on the alleged disability onset date. The [plaintiff] subsequently changed age category to "closely approaching advanced age" as of October 16, 2015, which was the day before his 50th birthday (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from November 19, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 25-35).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

---

[1]Plaintiff has past relevant work as a meat cutter/butcher. (Tr. 33, 66).

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as cashier II (1,500,000 nationally) and deli clerk (150,000 jobs nationally). (Tr. 34, 67).

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ failed to accord controlling weight to the treating physician, Dr. Nabarun Sarkar, M.D.; (2) the ALJ failed to consider the evidence that supports a finding of disability; and (3) the ALJ erred in not finding him credible.

### 1. Weight to the treating source opinion

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).

If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must determine the weight the opinion should be given based on a number of factors, including the length, nature and extent of the treatment relationship and the frequency of examination, as well as the medical specialization of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *Gayheart,* 710 F.3d at 376.

"Importantly, the Commissioner imposes on [the SSA's] decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight

the adjudicator gave to the treating source's medical opinion and the reasons for that weight."
*Cole*, 661 F.3d at 937 (citing SSR 96-2p).

On March 16, 2016, Dr. Sarkar, plaintiff's treating primary care physician, completed a physical residual functional capacity questionnaire. Plaintiff's diagnoses included severe asthma, COPD, chronic rhinitis, right knee pain (arthritis) and anxiety symptoms. Plaintiff's prognosis was "not good" and Dr. Sarkar reported plaintiff had multiple symptoms, including shortness of breath on minimal exertion, frequent respiratory infections, congested (sic), allergy symptoms, constant moderate to severe right knee pain, low back pain, and anxiety. Objective findings included poor lung expansion, rhonchi, crackles at time, knee tenderness and synovitis. (Tr. 632). Dr. Sarkar stated that depression and anxiety contributed to the severity of plaintiff's physical condition and that plaintiff's pain and other symptoms would constantly affect his attention and concentration. (Tr. 633). Dr. Sarkar opined that plaintiff was incapable of even a low stress job because of his anxiety. (*Id.*). Dr. Sarkar assessed that plaintiff was able to walk zero city blocks without rest or severe pain; he could sit for only 30 minutes at one time; he could stand for only 15 minutes at one time; and he could sit and stand/walk less than 2 hours in an eight-hour workday. (Tr. 634). Dr. Sarkar opined that plaintiff would need to take unscheduled breaks every 10 to 15 minutes for 10 to 15 minutes at a time throughout an 8-hour workday. (*Id.*). He also opined that plaintiff must use a cane or other assistive device while engaging in occasional standing/walking and plaintiff was "rarely" able to lift less than 10 pounds in a competitive work situation. (Tr. 635). Dr. Sarkar reported that plaintiff was rarely able to twist or stoop (bend), never able to crouch/squat and climb ladders, and occasionally able to climb stairs. (*Id.*). Dr. Sarkar stated that plaintiff was likely to be absent more than four days

7

per month as a result of his impairments or treatment and that plaintiff "cannot be exposed to dust, fumes, gases due to severe asthma." (Tr. 636).

The ALJ declined to give controlling weight to Dr. Sarkar's opinion. (Tr. 32). Instead, the ALJ gave the opinion partial weight, finding that Dr. Sarkar's limitations were not supported by the objective medical evidence, including Dr. Sarkar's own examination reports. (*Id.*).

Plaintiff alleges that the ALJ erred by according only partial weight to the opinion of Dr. Sarkar, his long-time treating physician. Plaintiff states that the ALJ failed to cite to specific evidence supporting his rejection of Dr. Sarkar's opinion that plaintiff would need unscheduled breaks, which plaintiff alleges is supported by his "excellent work history," and his impairments of COPD, knee disorder, and anxiety. (Doc. 10 at 10). Plaintiff also alleges that his subjective complaints of knee pain and breathing issues support Dr. Sarkar's restrictions. Plaintiff further points to objective evidence, including reduced range of motion, MRI results, and pulmonary function tests that purportedly support the treating physician's opinion. Finally, plaintiff alleges that the ALJ failed to consider that his medications cause drowsiness, "which could lead to needing additional breaks or being off task." (Doc. 10 at 11).

The record substantially supports the ALJ's decision to give Dr. Sarkar's assessment partial weight. The extreme functional restrictions assessed by Dr. Sarkar are not consistent with his own clinical findings or with the other medical evidence of record.

The ALJ reasonably concluded that Dr. Sarkar's opinion that plaintiff was unable to perform even a low stress job due to anxiety was not supported by his own progress notes. While Dr. Sarkar treated plaintiff for anxiety and prescribed medication (Tr. 400, 467, 610), his treatment notes lend little insight or support into the severity of plaintiff's anxiety. On one

occasion, he noted that plaintiff's anxiety was "stable." (Tr. 464). Dr. Sarkar noted plaintiff was "positive for depression" on three occasions (Tr. 627, 649, 651), but the majority of his notes show "no depression, no change in sleep, [and] no changes in thought content." (Tr. 462, 465, 625, 645, 647). As the ALJ noted, Dr. Sarkar's records show that in September 2015, January 2016, and March 2016, plaintiff displayed a normal affect and no depression. (Tr. 33, citing Tr. 646, 648, 652).

In addition, the other medical evidence of record supports the ALJ's decision to discount Dr. Sarkar's opinion on plaintiff's ability to tolerate low-stress jobs. As the ALJ noted, plaintiff had never participated in mental health treatment or been admitted to a psychiatric hospital, "which is not consistent with anxiety great enough to preclude the performance of even low-stress jobs." (Tr. 32). While plaintiff underwent a mental health evaluation at Lifepoint Solutions and was assessed with an adjustment disorder with mixed anxiety and depressed mood (Tr. 446, 454), he failed to show up for treatment and was discharged. (Tr. 472). The discharge note reflects that plaintiff reported, "Getting disability is what this is about for me. I feel like my depression and anxiety would go away if my situation changed." (Tr. 473). Finally, other examinations showed plaintiff displayed a normal mood and affect. (*See, e.g.*, Tr. 509).

Dr. Sarkar's opinion that plaintiff is unable to perform even low-stress work due to anxiety is not well-supported by his clinical findings and not consistent with the other substantial evidence in the record. 20 C.F.R §§ 404.1527(c)(2), 416.927(c)(2). The ALJ's finding in this regard is supported by substantial evidence.

Substantial evidence also supports the ALJ's rejection of Dr. Sarkar's standing, walking and lifting restrictions, as well as his opinion that plaintiff would likely miss more than four days

of work per month. Specifically, Dr. Sarkar opined that plaintiff would be unable to walk any city blocks without rest or severe pain and "rarely" lift less than 10 pounds. (Tr. 634-35). The ALJ reasonably determined that Dr. Sarkar's own examination reports fail to support these limitations.

Dr. Sarkar's clinical examinations consistently reflected normal examination musculoskeletal findings. In July 2015, plaintiff complained of bilateral knee pain and tenderness, but his limbs, gait and sensory examinations were all normal. (Tr. 32, Tr. 626). Plaintiff was advised to increase his exercise. (Tr. 626). Plaintiff again displayed normal limbs, gait and sensory examinations in September 2015. (Tr. 32, 652). In January 2016, plaintiff denied arthralgia, myalgia, and limitation of motion, and his limbs, gait and sensory exams were again normal. (Tr. 32, 647-48). In March 2016, Dr. Sarkar again found plaintiff's limbs, gait and sensory examinations were normal. (Tr. 33, 646). In addition, Dr. Sarkar consistently noted that plaintiff demonstrated "no weakness," and he was repeatedly noted to have no change in his strength or exercise tolerance (Tr. 462, 464-465, 467, 627, 645, 647, 649, 651). Additionally, Dr. Sarkar's limitations are inconsistent with other record evidence, including a musculoskeletal examination showing normal range of motion in May 2015 (Tr. 509), January 2016 (Tr. 647), and March 2016 (Tr. 645) and no edema or clubbing in May 2014 (Tr. 397).

In support of his argument, plaintiff points to findings of swelling and tenderness in the right knee in May 2013 (Tr. 613), reduced range of motion in the knee in June 2013 (Tr 612), and limited range of motion in November 2015 (Tr. 649). (Doc. 10 at 10). Two of those visits pre-date his alleged onset date of November 2013 and are not relevant, and visits after November 2015 showed normal range of motion (Tr. 647-January 2016; Tr. 645-March 2016). In addition,

plaintiff alleges that MRI results of the lumbar spine show evidence of degenerative endplate changes. (Doc. 10 at 10, citing Tr. 617). However, the MRI reflects "minimal Schmorl's nodes"[3] in the T12 endplates (Tr. 616), and plaintiff has failed to point to any medical opinion or evidence that correlates these minimal findings in his thoracic spine with an inability to perform the walking or standing required for light work.

Dr. Sarkar also opined that plaintiff "cannot be exposed to dusts, fumes, [and] gases due to severe asthma." (Tr. 636). Plaintiff alleges that the "February 2014 Pulmonary Function test [which] showed severe obstructive defect consistent with stage 3 COPD and chronic bronchitis" supports Dr. Sarkar's opinion. (Doc. 10 at 10, citing Tr. 345). This is one of several pulmonary function tests assessing plaintiff's pulmonary functioning that were thoroughly discussed by the ALJ in his decision. (*See* Tr. 30-31). As the ALJ explained, plaintiff had one spirometry score in April 2015 that was below Listing level severity but the remainder of plaintiff's scores were well-above Listing level, including the most recent scores in March 2016. (Tr. 27). The ALJ also noted that in July 2015, Dr. Sarkar's exam showed rhonchi and decreased breath sounds (Tr. 32, 625) and in September 2015, Dr. Sarkar noted that plaintiff's lungs were congested, his breath sounds were decreased, and there were rhonchi. (Tr. 32, 652). However, plaintiff's symptoms improved starting in January 2016 when Dr. Sarkar noted that plaintiff had clear lungs, normal breath sounds, and no rhonchi or crackles. (Tr. 32-33, 648). In March 2016,

---

[3] A Schmorl's node is defined as an "upward and downward protrusion (pushing into) of a spinal disk's soft tissue into the bony tissue of the adjacent vertebrae. Schmorl's nodes, which are common, especially with minor degeneration of the aging spine, are detectable via X-ray as spine abnormalities. Schmorl's nodes are most common in the middle and lower spine. Schmorl's nodes usually cause no symptoms, but they reflect that 'wear and tear' of the spine has occurred over time." Medical Definition of Schmorl's Node, Medicine Net, https://www.medicinenet.com/script/main/art.asp?articlekey=14007 (last visited Jul. 30, 2018).

plaintiff continued to have clear lungs, normal breath sounds, and no rhonchi or crackles. (Tr. 33, 646). In addition, the record shows plaintiff's symptoms were triggered by exposure to pulmonary irritants. (Tr. 373, 382, 396, 482, 487, 492). Based on Dr. Sarkar's examination findings and the March 2016 spirometry scores, the ALJ determined that plaintiff must avoid concentrated exposure to pulmonary irritants. (Tr. 28, 33, citing Tr. 639). The state agency physicians likewise imposed the same limitation of no concentrated exposure to pulmonary irritants. (Tr. 81, 94, 112). In light of Dr. Sarkar's clinical findings over time, including his most recent examination findings in March 2016, the spirometry tests, and the state agency physicians' assessments, the ALJ reasonably discounted Dr. Sarkar's complete prohibition on exposure to pulmonary irritants and accommodated plaintiff's pulmonary impairment by limiting him to jobs having no concentrated exposure to pulmonary irritants.

Finally, plaintiff contends the ALJ failed to address the side effects of plaintiff's medications, which could lead to needing additional breaks or being off-task. In support, plaintiff points to Dr. Sarkar's opinion that "analgesics cause drowsiness, nausea." (Doc. 10 at 11, Tr. 633).

Contrary to plaintiff's argument, the ALJ acknowledged that plaintiff "takes many medications" and that they relieve some of his symptoms but do not eliminate them. (Tr. 29). The ALJ also acknowledged plaintiff's testimony that his medications "upset his stomach and increase urination as side effects." (Id.). Plaintiff did not testify his medications make him sleepy, and the record shows he denied side effects from his pain medication at times. (Tr. 403, 406). Plaintiff does not cite to any record evidence showing he reported medication side effects

to Dr. Sarkar or any other physician. The ALJ did not err in discussing plaintiff's medication and side effects.

The ALJ gave "good reasons" for giving Dr. Sarkar's opinion reduced weight and those reasons are substantially supported by the evidence of record. Therefore, plaintiff's first assignment of error should be overruled.

### 2. Whether the ALJ failed to consider the evidence that supports plaintiff's disability claim.

Plaintiff's second assignment of error alleges that "[t]he ALJ failed to consider in full the examinations and diagnos[e]s of the lung specialists, mental health professionals, and pain management doctor." (Doc. 10 at 11, citing Tr. 373-385, 396-399, 403-411, 432-460, 475-498, 638-643). Plaintiff contends the ALJ may not "pick and choose" from the evidence and may not selectively cite the evidence of record to reach a conclusion that plaintiff is not disabled.

Plaintiff alleges that his lung specialists, Drs. Ray and Ataya, repeatedly noted plaintiff's complaints of shortness of breath and congestion. Plaintiff alleges that their objective examinations revealed boggy nasal turbinates and diminished breath sounds, and they diagnosed severe COPD with asthma component, allergic rhinitis, left pleural effusion, and right pulmonary nodule. (Doc. 10 at 11-12, citing Tr. 382, 396-97, 475, 477).

Contrary to plaintiff's representation, the ALJ fully considered the records from Drs. Ray and Ataya in assessing his respiratory impairments. Specifically, the ALJ discussed Dr. Ray's examination in January 2014, noting plaintiff had diminished breath sounds but no wheezes or rales, and he was in no respiratory distress. (Tr. 30, citing Tr. 373-74). Dr. Ray diagnosed suspected asthma and possible COPD. (Tr. 30, Tr. 374). The ALJ also discussed Dr. Ray's

13

spirometry testing in February 2014 (Tr. 30) and Dr. Ray's examination findings in May 2014, which included normal breath sounds, no accessory muscle usage or stridor, and no rales or wheezes. (Tr. 30, citing Tr. 397). The ALJ noted Dr. Ray's diagnoses of dyspnea, which was likely from obstructive lung disease, and asthma/COPD. (*Id.*). The ALJ also considered and specifically discussed the September[4] 2015 examination report of Dr. Ataya that plaintiff has referenced. (Tr. 30, citing Tr. 476-77). The ALJ noted Dr. Ataya's findings of no accessory muscle use, no wheezes, rhonchi, dullness, or percussion, and good air entry. (Tr. 30, 476). The ALJ acknowledged Dr. Ataya's diagnosis of severe COPD with an asthma component. (*Id.*). The ALJ also noted Dr. Ataya's spirometry testing in March 2016, showing well-above Listing level scores. (Tr. 31, Tr. 639). Thus, the ALJ fully considered the evidence from plaintiff's pulmonary specialists.

To the extent plaintiff may be taking issue with the ALJ's failure to relate Dr. Ray's finding of "boggy nasal turbinates" (Tr. 374, 397), the ALJ was not required to cite to every piece of evidence in the record, and plaintiff has not shown how the ALJ erred by failing to specifically cite this single finding. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (ALJ can fulfill his obligation "without directly addressing in his written decision every piece of evidence submitted by a party"); *Simons v. Barnhart*, 114 F. App'x 727 733 (6th Cir. 2004) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").

---

[4] It appears the ALJ mistakenly characterized this as an "April" 2015 report from Dr. Ataya.

Plaintiff also alleges the ALJ erred by not considering the Lifepoint mental health assessment, which revealed severe scores for depression and anxiety based on plaintiff's reported panic attacks and suicidal ideation and diagnoses of adjustment disorder with mixed anxiety and depressed mood. (Doc. 10 at 12, citing Tr. 446-47, 454). Plaintiff is correct that the ALJ's decision does not mention the September 2014 mental health assessment from Lifepoint. However, as indicated above, there is no requirement that the ALJ discuss every piece of evidence in the administrative record. *Kornecky,* 167 F. App'x at 508. Assuming, arguendo, that the ALJ erred by not discussing this evidence, it amounts to harmless error at most. The counselor at Lifepoint diagnosed plaintiff with an adjustment disorder with mixed anxiety and depressed mood. Plaintiff was terminated from Lifepoint because he failed to follow through with treatment, and no treating or examining source at Lifepoint assessed any functional restrictions as a result of plaintiff's diagnosis. (Tr. 472). Though the ALJ did not find "adjustment disorder" to be a severe impairment, the ALJ did find that plaintiff suffered from a severe affective disorder and limited plaintiff to work involving simple, routine, and repetitive tasks that did not require a production rate pace and simple work-related decisions. The ALJ further limited plaintiff to a job with few changes in a routine work setting, defined as no more than ordinary and routine changes in the work setting and duties. (Tr. 28). Plaintiff has not shown that his adjustment disorder imposed functional limitations in addition to those assessed by the ALJ nor has he indicated how inclusion of this impairment as a severe impairment would have changed the ALJ's assessment of his functional limitations.

Finally, plaintiff takes issue with the ALJ's assessment of his knee function and specifically with the ALJ's recitation of range of motion findings or the lack thereof. Plaintiff

15

points out that in reviewing Dr. Sarkar's March 2016 treatment note, the ALJ noted plaintiff did not have any limitations in range of motion. (Tr. 33, citing Tr. 645). This is an accurate recitation of the evidence and the Court is unable to discern the relevance of plaintiff's citation to this evidence. In addition, and contrary to plaintiff's assertion (Doc. 10 at 12), the ALJ in fact considered the July 2014 evidence from plaintiff's pain management physician showing plaintiff had limited range of motion in his right knee. (Tr. 29, citing Tr. 404). Plaintiff also references evidence of decreased range of motion in May 2013 (Doc. 10 at 12, citing Tr. 613), but this evidence is prior to his disability onset date when plaintiff was still working full-time. The ALJ thoroughly considered the evidence of plaintiff's knee impairment in assessing plaintiff's ability to work and did not "pick and choose" evidence adverse to plaintiff to arrive at a preconceived decision. Plaintiff's second assignment of error should be overruled.

### 3. The ALJ's evaluation of plaintiff's subjective complaints

Plaintiff alleges the ALJ erred in evaluating his subjective complaints because there is objective evidence that plaintiff "suffered from chronic pain and decreased range of motion in his lower extremities (Tr. 404-406, 612, 614, 615, 616-617, 625, 628, 649-650, & 652), COPD/asthma (Tr. 345, 373, 383, 397, 420-430, 468, 475, 477, 482-483, 488, 492, 514, 556, 611, 625-628, 638-642, 649-650 & 652) and anxiety (Tr. 386, 400-401, 432-459, 467, & 610) and borderline intelligence (Tr. 329-340 & 386-391)." (Doc. 10 at 13). Plaintiff further alleges that he has side effects from his medication, and he uses a cane. Plaintiff alleges the ALJ improperly considered plaintiff's use of non-prescription cane as a negative factor in evaluating his credibility. (*Id.*).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). *See also Walters v. Comm'r. of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."). Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

In addition, the regulations and SSR 16-3p[5] describe a two-part process for evaluating an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms;

---

[5] The SSA rescinded SSR 96-7p and replaced it with SSR 16-3p, which is applicable to agency decisions issued on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p therefore applies to the ALJ's decision here, which was issued on July 21, 2016. SSR 16-3p eliminates "the use of the term 'credibility'" from the SSA's sub-regulatory policy and clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility." *Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (report and recommendation), *adopted*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018).

(6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 405.1529(c); SSR 16-3p, 2017 WL 5180304, at *3-8.

The ALJ properly evaluated plaintiff's subjective complaints in accordance with 20 C.F.R. § 405.1529(c) and SSR 16-3p. The ALJ determined that plaintiff had medically determinable physical and mental impairments that could reasonably be expected to cause his alleged symptoms. (Tr. 29). However, the ALJ found plaintiff's statements as to the intensity, persistence and limiting effect of those symptoms were not entirely consistent with both the medical evidence and other evidence of record. (*Id.*). In making his determination, the ALJ determined that the evidence does not support the severe functional limitations alleged by plaintiff. The ALJ noted that records from plaintiff's treating physician repeatedly showed plaintiff had a normal gait, and spirometry scores from March 2016 were well above Listing level. In addition, despite plaintiff's complaints of debilitating mental impairments, the ALJ noted that plaintiff has never undergone mental health treatment or been psychiatrically hospitalized. (Tr. 33).

Upon review of the ALJ's credibility determination, the Court concludes the ALJ's finding is substantially supported by the evidence of record and is entitled to deference. The ALJ determined that plaintiff's subjective allegations of pain and limitation were inconsistent with the medical evidence of record. (Tr. 29). The ALJ acknowledged plaintiff's history of knee surgeries in 2006, 2008, and 2009, that plaintiff used a cane, and that plaintiff had limited range of motion in his right knee in July 2014. (Tr. 29). However, the ALJ reasonably noted that subsequent medical evidence showed plaintiff consistently demonstrated a normal gait and

normal sensory findings on examination. (Tr. 29, 32, 463, 626, 648, 646). While plaintiff demonstrated limited range of motion in November 2015 (Tr. 649), he displayed no such limitations during exams in January and March 2016 (Tr. 645, 647). The ALJ reasonably considered this objective evidence in evaluating the consistency of plaintiff's alleged limitations due to his knee impairment with the record evidence. And contrary to plaintiff's allegation, there is no evidence the ALJ considered plaintiff's use of a non-prescribed cane as a negative factor in assessing plaintiff's credibility. The ALJ's comment that plaintiff "uses a cane, which was not prescribed" (Tr. 29), was made in the context of relating plaintiff's testimony from the hearing. (Tr. 29, 57).

The ALJ also considered the extent to which the medical evidence of plaintiff's respiratory impairments supported plaintiff's testimony that he avoided exerting himself in order to alleviate shortness of breath. The ALJ thoroughly discussed the spirometry test results, noting that while one score was below Listing level, all the other scores were well above Listing level severity. (Tr. 27, 30-31). The ALJ also discussed plaintiff's examinations with Dr. Sarkar and the lung specialists, noting plaintiff was symptomatic in February 2014, March 2015, July 2015, and September 2015 (Tr. 30), but he had no diminished breath sounds, had no wheezes or rales, and was in no respiratory distress in January 2014, May 2014, December 2014, April 2015, January 2016, and March 2016 (Tr. 30-31). Based on Dr. Sarkar's respiratory exams and the most recent March 2016 spirometry test scores, the ALJ's RFC reasonably included a limitation on avoiding concentrated exposure to pulmonary irritants (Tr. 33), which triggered plaintiff's symptoms (Tr. 373, 382, 396, 482, 487, 492).

The ALJ further considered the extent to which plaintiff's allegations of debilitating mental health symptoms was consistent with the medical evidence of record. (Tr. 31-33). As discussed in connection with plaintiff's first assignment of error, Dr. Sarkar's progress notes and the other evidence of record do not support a finding that plaintiff is unable to perform even low stress work. In addition, plaintiff did not testify as to any restrictions from his mental health impairments. (Tr. 49-64). The ALJ acknowledged that plaintiff was limited by his borderline intelligence, and the ALJ reasonably determined that plaintiff's symptoms from his affective disorder and borderline intellectual functioning could be accommodated by limiting him to work involving: simple, routine, and repetitive tasks; simple work-related decisions; few changes in a routine work setting; and no production rate pace.

Plaintiff contends there is objective evidence that shows he suffers from chronic pain and decreased range of motion in his lower extremities, anxiety and borderline intelligence. (Doc. 10 at 13). The ALJ acknowledged that plaintiff has several underlying medical conditions, including a major joint disorder of the knee, an affective disorder, and borderline intellectual functioning, and determined each to be a severe impairment. Yet, the fact that plaintiff has been diagnosed with underlying medical impairments says nothing about the limitations resulting from such impairments or whether the impairments are of such severity that they would reasonably be expected to produce allegedly disabling pain and limitations. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (mere diagnosis of medical impairment says nothing about severity of the condition). Plaintiff has not shown that the ALJ committed any error in connection with the

assessment of his credibility. The Court finds that the ALJ adequately considered plaintiff's subjective statements as to his symptoms and functional limitations, along with the objective and other medical evidence and the medical opinions of record. (Tr. 29-33). *See Newman v. Colvin*, No. 1:15-cv-639, 2017 WL 685685, at *7 (S.D. Ohio Feb. 1, 2017) (holding that ALJ properly considered the requisite factors in making his credibility determination because he considered plaintiff's subjective statements, objective medical evidence, plaintiff's activities of daily living, and the record medical opinions) (report and recommendation), *adopted*, 2017 WL 680632 (S.D. Ohio Feb. 21, 2017); *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005) ("[t]he ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence.").

Even where substantial evidence would support a different conclusion or where a reviewing court would have decided the matter differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999). Though there is some medical evidence supporting plaintiff's testimony, the ALJ's credibility determination is substantially supported and should not be disturbed by this Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Because the ALJ's credibility determination is supported by substantial evidence, this Court must defer to it. *See Buxton*, 246 F.3d at 772. Plaintiff's third assignment of error should be overruled.

It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this matter be **CLOSED** on the docket of the Court.

Date: _7/31/2018_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ROBERT W. ZIEGER,
    Plaintiff,

      vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:17-cv-631
Black, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).